IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| BIS GLOBAL, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 1:21-cv-00211 (RDA/IDD) |
| ) | |
| ACTIVE MINDS, INC., ) | |
| ) | |
| Defendant. ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

This matter comes before this Court on Active Minds, Inc.'s ("Defendant") Motion to Compel Arbitration and to Dismiss, or in the Alternative, to Stay Litigation ("Motion"). Dkt. 4. This Court has dispensed with oral argument as it would not aid in the decisional process. Fed. R. Civ. P. 78(b); Local Civil Rule 7(J). This matter has been fully briefed and is now ripe for disposition. Considering Defendant's Memorandum in Support of its Motion (Dkt. 5) and its supporting declarations (Dkt. Nos. 6; 7), BIS Global, Inc.'s ("Plaintiff's") Opposition (Dkt. 10), and Defendant's Reply (Dkt. 11), this Court GRANTS the Motion for the reasons that follow and DISMISSES the case without prejudice.

I. BACKGROUND

A. Factual Background

This matter arises from the Complaint Plaintiff filed first in the Circuit Court of Fairfax County, Virginia alleging breach of a contract between Plaintiff and Defendant, or in the alternative, quantum meruit. Plaintiff is a Virginia-domiciled corporation that provides software services to other businesses. Defendant is a 501(c)(3) organization domiciled in Washington, D.C.

that promotes mental health awareness and education for young adults. The following facts are not contested by either of the parties.

On December 13, 2017, Plaintiff responded to Defendant's Request for Proposal ("RFP") with a proposed contract for implementing and running Plaintiff's CharityEngine CRM System. Dkt. 6 ¶ 12. On December 13, 2017, upon review of the proposed contract, Defendant's Chief Operating Officer ("COO") provided the Director of Business Development for Plaintiff's CharityEngine ("Account Representative") several proposed changes to the contract terms Plaintiff had originally offered. On December 15, 2017, Plaintiff's Account Representative responded to Defendant's COO by attaching (1) the "Active Minds/Charity Engine contract with [Defendant's] suggested edits"; (2) the "Active Minds/CharityEngine Contract Addendum 1 that addresses the modifications from [Defendant's] lawyers"; and (3) the "Active Minds/CharityEngine Contract Addendum 2" which contained "the detailed pricing proposal [Plaintiff] sent to [Defendant]." Dkt. 6-1 at 2.

On December 20, 2017, Plaintiff's Chief Revenue Officer ("CRO") contacted Defendant's Founder and Executive Director ("Founder") inquiring about the status of Defendant's review of "the contract revisions [Plaintiff] sent over." Dkt. 6-2 at 5. Within several hours, Defendant's Founder sent over an additional round of proposed changes, which Plaintiff's CRO noted were "fine with us" and that he had "added them to the addendum" ("Addendum") such that "[a]ll that[] [was] left is signatures." *Id.* at 4. On December 21, 2017, Defendant's Office Manager asked Plaintiff's CRO to include already-agreed upon changes reflected in the Addendum that had not been made by Plaintiff so that Defendant's Founder could "sign the contract as soon [as] it's changed." *Id.* Plaintiff's CRO immediately responded, sending over a new draft of the Addendum reflecting the changes. The parties subsequently executed the Software & Services Contract

2

("Contract"). *Id.* at 3-4. The Addendum generally included revisions to several clauses within the body of the Contract, including making the option to pursue arbitration a binding requirement upon the parties in the event of any dispute arising with respect to the agreement. To be clear, Clause 34 of the Contract provides that "[a]ny dispute arising under this agreement *may be* resolved, at BIS Global's option, by binding arbitration in the Commonwealth of Virginia and under the rules of the [AAA]." Dkt. 1-2 at 13 (emphasis added). Whereas, the parallel provision in the Addendum notes that "[a]ny dispute arising under this agreement *shall be* resolved by binding arbitration in the Commonwealth of Virginia and under the rules of the [AAA]." Dkt. 6-1 at 10 (emphasis added).

The Contract's term was for 64 months subject to an early termination fee and a $42,000 annual fee. On December 9, 2019, Defendant's COO emailed Plaintiff with a request to terminate the Contract immediately but to retain access to Plaintiff's software during Defendant's transition to another software provider. Dkt. 1-2 ¶ 12. Defendant sought to terminate the Contract because of Plaintiff's "persistent performance and customer service failures" and Plaintiff's untimely resolution of "as many as nineteen outstanding tickets" with CharityEngine's help desk. Dkt. 6 ¶¶ 35, 37-38. The parties agreed that Defendant would cease using Plaintiff's platform in June of 2020, but Defendant continued to use the platform through the end of that year. Plaintiff sued Defendant pursuant to failure to comply with Clauses 11 and 13 of the Contract—both of which contain revised versions in the Addendum. Moreover, Plaintiff alleges that they sent Defendant an invoice for $56,000 for overusing the software after the Contract terminated as well as an annual license fee for 2021—neither of which Defendant ever paid. In sum, the Complaint alleges that Defendant owes Plaintiff $155,142.09 as a result of the alleged contract breach to include: "1) "[a]n early termination fee in the amount of $42,000; 2) the Annual License Invoice in the amount

3

of $35,000; 3) an overage fee per the Contract in the amount of $72,881.72; and 4) Uncollected late payments and legal fees in the amount of $5,260.37." Dkt. 1-2 ¶ 19.

### B. Procedural Background

On January 18, 2021, Defendant filed a Demand for Arbitration before the American Arbitration Association ("AAA"). Dkt. 7-1. Plaintiff filed the Complaint on January 19, 2021 in the Circuit Court of Fairfax County, Virginia and served Defendant on February 2, 2021. *See* Dkt. Nos. 1; 1-2. On January 25, 2021, the AAA acknowledged receipt of the Demand for Arbitration and instructed the parties on the requirements to proceed. On January 26, 2021, Plaintiff indicated to AAA over e-mail its jurisdictional objections. Dkt. 7-4 at 2-4. On January 29, 2021, Defendant outlined in a letter to the AAA its position regarding the jurisdictional dispute with Plaintiff. Dkt. 7-7 at 2-4. And on February 22, 2021, the AAA determined that Defendant's Demand for Arbitration would proceed after having "met the filing requirements" but that "the parties' contentions have been made a part of the file and will be forwarded to the arbitrator upon appointment" for the arbitrator to determine. Dkt. 7-8 at 2. On February 24, 2021, Defendant removed the case to this Court. On March 3, 2021, Defendant filed the instant Motion, the Memorandum in Support and supporting declarations from the Founder and a member of Defendant's counsel. Dkt. Nos. 4-7. Plaintiff filed its Opposition on March 17, 2021 and Defendant filed their Reply on March 23, 2021.

### II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(3) allows for a party to move for dismissal for improper venue. Fed. R. Civ. P. 12(b)(3).[1] Where a party moves for dismissal pursuant to a forum

---

[1] This Court construes Defendant's Motion to Dismiss as a Rule 12(b)(3) motion. That said, other courts have construed motions to compel arbitration as motions to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). *See Lipcon v. Underwriters at Lloyd's, London*,

4

selection clause, such motions are "cognizable as motions to dismiss for improper venue." *Sucampo Pharm., Inc. v. Astellas Pharma, Inc.*, 471 F.3d 544, 549 (4th Cir. 2006). An arbitration clause is a "specialized kind of forum-selection clause." *Aggarao v. MOL Ship Mgmt. Co., Ltd.*, 675 F.3d 355, 365 n. 9 (4th Cir. 2012) (quoting *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519 (1974)). Therefore, Federal Rule of Civil Procedure 12(b)(3) is the proper vehicle by which a party may move to dismiss an action due to an arbitration clause.

Further, "because a motion under 12(b)(3) is a disfavored 12(b) motion," the Fourth Circuit has held that "a defendant will have to raise the forum selection issue in [its] first responsive pleading, or waive the clause." *Sucampo Pharm., Inc.*, 471 F.3d at 549. And in considering a 12(b)(3) motion "the court is permitted to consider evidence outside of the pleadings." *Aggarao*, 675 F.3d at 365-66. To defeat such a motion, the non-movant must make a "*prima facie* venue showing," and the facts must be viewed "in the light most favorable to the plaintiff." *Id*. at 366 (citing *Mitrano v. Hawes*, 377 F.3d 402, 405 (4th Cir. 2004)).

III. ANALYSIS

In filing the Complaint, Plaintiff did not include the Addendum as part of the Contract governing the breach of contract dispute. *See* Dkt. 1-2 at 9-14. Indeed this approach comports with Plaintiff's contention that the Addendum did not constitute part of the agreed-upon Contract signed by each party. Plaintiff argues that because the parties signed before the Addendum, and because the Addendum was not paginated (unlike the body of the Contract), the Addendum is

---

148 F.3d 1285, 1290 (11th Cir. 1998) (favoring Rule 12(b)(3) as the proper vehicle for compelling arbitration and staying or dismissing a case because of the Supreme Court's holding in *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 32 (1988) that a district court retains discretion to transfer a civil action "to any other district or division where it might have been brought" and that this transferring power derivative of 28 U.S.C. § 1404(a) reflects the venue preferences negotiated by private parties); *Stone v. Wells Fargo Bank, N.A.*, 361 F. Supp. 3d 539, 548-49 (D. Md. 2019) (discussing various approaches to construing motions to compel).

5

unenforceable for purposes of contract law. Without the Addendum in play, Plaintiff maintains adequate grounds to bring this suit against Defendant in this forum and not in arbitration.

Defendant asserts in "its first responsive pleading" to the Complaint that the Contract includes the Addendum and that the parties negotiated at arm's length to include the Addendum as a precondition to Defendant executing the Contract in the first instance. *Sucampo Pharm., Inc.*, 471 F.3d at 549. Therefore, the jurisdictional issue is properly before the Court.

For the reasons that follow, this Court holds that the provisions in the Addendum are integrated into the Contract, override any conflicting terms in the body of the Contract, and that Plaintiff is therefore compelled to enter into arbitration with Defendant.

   A. Whether the Binding Arbitration Clause in the Addendum Applies to the Contract and Therefore Warrants Compelling Arbitration

      1. The Federal Arbitration Act as the Guiding Legal Framework for Reviewing Arbitration Clauses

The "preeminent concern of Congress in passing" the Federal Arbitration Act ("FAA") "was to enforce private agreements into which parties had entered[.]" *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 625 (1985). The FAA requires that written arbitration agreements arising out of commercial contracting "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA "represents 'a liberal policy favoring arbitration agreements.'" *Murray*, 289 F.3d at 301 (citing *Moses H. Cone Mem'l Hop. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). Under such a policy, "any doubts concerning the scope of arbitral issues should be resolved in favor of arbitration[.]" *Murray*, 289 F.3d at 301.

To assess the validity of a governing arbitration provision subject to the FAA in a commercial dispute, the Fourth Circuit applies the test enunciated in *Adkins v. Labor Ready, Inc.*:

6

> [i]n the Fourth Circuit, a litigant can compel arbitration under the FAA if he can demonstrate "(1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of the [nonmovant] to arbitrate the dispute."

303 F.3d 496, 501 (4th Cir. 2002) (quoting *Whiteside v. Teltech Corp.*, 940 F.2d 99, 102 (4th Cir. 1991)).

If the court is satisfied that an arbitration provision was agreed to in writing, it must "make an order summarily directing the parties to proceed with the arbitration in accordance with the terms thereof." 9 U.S.C. § 4; *see also Connell v. Apex Sys., LLC*, No. 3:19-cv-299, 2020 WL 354742, at *3 (E.D. Va. 2020) ("When a valid arbitration agreement exists and the issues in the case fall within the scope of that agreement, '[a] district court . . . has no choice but to grant a motion to compel arbitration.'" (quoting *Adkins*, 303 F.3d at 500)).

2. Applying the *Adkins* factors

i. *The existence of a dispute between the parties*

This Court finds that in this case the first element has been satisfied because there is clearly a dispute between Plaintiff and Defendant, as evidenced by Plaintiff's Complaint.

ii. *A written agreement that includes an arbitration provision which purports to cover the dispute*

The second *Adkins* element is also satisfied as this Court finds that the Addendum containing the binding arbitration provision has been integrated into the Contract between the parties. "Although the FAA manifests a liberal federal policy favoring arbitration agreements and 'questions of arbitrability must be addressed with a healthy regard' for this policy, *Moses*, 460 U.S. at 24, the [FAA] leaves interpretation of an agreement to the application of common law principles of contract law." *Whiteside*, 940 F.2d 99 at 101.

7

A federal court sitting in a diversity suit, as here, must apply the substantive law directed by the forum's choice-of-law rules. This is a fundamental principle. *See Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938); *see also Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). Significantly, "Virginia law looks favorably upon choice of law clauses in a contract, giving them full effect except in unusual circumstances."[2] *Edwards Moving & Rigging, Inc. v. W.O. Grubb Steel Erection, Inc.*, No. 3:12-cv-00146, 2012 WL 1415632, at *3 (E.D. Va. Apr. 23, 2012) (citing *Colgan Air, Inc. v. Raytheon Aircraft Co.*, 507 F.3d 270, 275 (4th Cir. 2007)). Here, the Contract contains a choice-of-law provision, not in conflict with that of the Addendum, which subjects the Contract to "the laws and judicial decisions of the Commonwealth of Virginia." Dkt. 1-2 at 13. As such, there is no dispute that Virginia contract interpretation law applies.

Under Virginia law, contract interpretation is a question of law governed by the ordinary rules of contract interpretation. *Johnson v. Circuit City Stores*, 148 F.3d 373, 377 (4th Cir. 1998). Specific to arbitration clauses, the party "seeking to compel arbitration bears the burden of establishing the existence of an arbitration provision that purports to cover the dispute." But once the moving party satisfies this burden, the non-moving party must "come forward with sufficient facts to place the entitlement to arbitration in dispute." *Lovelady v. Five Star Quality Care-VA, LLC*, No. 4:18-cv-18, 2018 WL 3580768, at *7 (E.D. Va. July 25, 2018).

---

[2] The unusual circumstances to which the court in *Edwards Moving & Rigging, Inc. v. W.O. Grubb Steel Erection, Inc.*, referred, include situations in which "the contract at issue . . . is 'unfair or unreasonable, or [ ] affected by fraud or unequal bargaining power,' *Paul Bus. Sys., Inc. v. Cannon U.S.A., Inc.*, 240 Va. 337, 342 (1990), or (b) there is some indication that the parties did not clearly intend for the designated law to govern the terms of the contract." No. 3:12-cv-00146, 2012 WL 1415632, at *3 (E.D. Va. Apr. 23, 2012) (citing *Senture, LLC. v. Dietrich*, 575 F. Supp. 2d 724, 727 (E.D. Va. 2008) (citation omitted)). Such circumstances do not appear to be present in this case.

Courts applying Virginia contract interpretation principles construe the contract according to its plain meaning if its terms are "clear and unambiguous." *See, e.g.*, *Bridgestone/Firestone, Inc. v. Prince William Square Assocs.*, 250 Va. 402, 407 (1995). A term or clause is considered ambiguous "when it may be understood in more than one way or when it refers to two or more things at the same time." *Granite State Ins. Co. v. Bottoms*, 243 Va. 228, 234 (1992). "Thus, Virginia law construes the contract strictly to effectuate the intentions of the parties, giving terms their plain meaning, and declining to read in an ambiguity or meaning the parties did not intend." *Dragas Mgmt. Corp. v. Hanover Ins. Co.*, 798 F. Supp. 2d 766, 773 (E.D. Va. 2011) (collecting cases).

If a contract term is deemed ambiguous, courts applying Virginia contract interpretation law may examine "relevant extrinsic evidence of the parties' intent." *CITGO Asphalt Ref. Co. v. Frescati Shipping Co.*, 140 S. Ct. 1081, 1088 (2020) (quoting 11 R. Lord, Williston on Contracts § 30:7); *see also Cascades N. Venture Ltd. P'Ship v. PRC Inc.*, 249 Va. 574, 579 (1995) ("[T]he rule excluding parol evidence has no application where the writing on its face is ambiguous, vague, or indefinite. In such a case, the proper construction of the contract is an issue for the trier of fact, and the court should receive extrinsic evidence to ascertain the intention of the parties and to establish the real contract between them."); *Acres v. Serco, Inc.*, 102 Va. Cir. 66 (2019) ("The construction of an ambiguous contract is a matter submitted to the trier of fact, who must examine the extrinsic evidence to determine the intention of the parties."). When ambiguity is found, Virginia courts must construe contracts "more strictly against the party who prepared it if there is any ambiguity." *Thornton v. Cappo Mgmt. V., Inc.*, No. 3:04-cv-819, 2005 U.S. Dist. LEXIS 10202, at *11 (E.D. Va. Mar. 31, 2005) (citing *Graham v. Commonwealth*, 206 Va. 431, 434-35 (1965)).

Here, it appears that the Contract contains no explicit reference to any addendum, exhibit or appendix related to the agreement. Instead, Clause 19, for which there is no parallel provision in the Addendum, provides:

> This Agreement constitutes the entire understanding and agreement between the parties and supersedes any and all prior and contemporaneous, oral or written representations, communications, understanding and agreements between the parties with respect to the subject matter hereof, all of which representations, communications, understandings and agreements are hereby canceled to the extent they are not specifically merged herein. The parties acknowledge and agree that neither of the parties is entering into this Agreement on the basis of any representations or promises not expressly contained herein.

Dkt. 1-2 at 12-13. And Clause 20 adds:

> This Agreement shall not be modified, amended, canceled or in any way altered, nor may it be modified by custom and usage of trade or course of dealing, except by an instrument in writing and signed by both of the parties hereto.

*Id.* at 12. Because the Contract defines "Agreement" solely as "[t]his Software & Services Contract," the restriction imposed by Clause 19 is ambiguous. Without any reference to the Addendum, this Court cannot, on the face of the Contract, conclude that the Addendum is or is not integrated within the four corners of the Contract. Nor can this Court discern from the plain terms of the Contract whether the restrictive clause on amendments and modifications applies to contemporaneous written agreements or simply to instruments in writing and signed by both of the parties at a future time. While Defendant argues "[t]here are at least five indicia on the face of the [Contract] confirming that it includes [the Addendum]," after assessing the Contract's plain meaning, this Court does not find these factors sufficiently compelling to conclude that the Addendum was executed as part of the Contract. Dkt. 5 at 19 (noting that the Addendum aesthetically looks to accord with the overall presentation of the Contract and contains parallel provisions with the clauses in the Contract).

Consequently, this Court exercises its prerogative to consider extrinsic evidence to determine the intent of the parties. Moreover, in construing the instant Motion to be made pursuant to Federal Rule of Civil Procedure 12(b)(3), this Court "is permitted to consider evidence outside of the pleadings." *Aggarao*, 675 F.3d at 365-66. As such, this Court considers the evidence proffered by Defendant with respect to the negotiation process between the parties prior to executing the Contract.

To begin, Plaintiff's Opposition relies entirely on a plain reading of the Contract, contending that the Addendum "purports to modify" the Contract or "is not a valid modification" to the Contract. Dkt. 10 at 3-4. Plaintiff's position seeks to defenestrate ordinary rules of contract interpretation to suggest that a page appended to a Contract cannot be integrated if the signature to the agreement physically exists prior to that page despite it being contained in a singular file. *Id.* Worse, in ignoring the substance or context in which the Addendum was formed, Plaintiff makes a full-throated admission that the Addendum is indeed authentic and fails to address the email chains proffered by Defendant discussing the negotiations that occurred between the parties. *See id.* As a result, Plaintiff fails to address the intent argument raised by Defendant's presentation of extrinsic evidence. That approach proves fatal to Plaintiff's argument as this Court considers Plaintiff to have altogether waived Defendant's intent argument. *See Reed v. Fairfax Cty., Va.*, No. 1:18-cv-1454, 2020 WL 252992, at *5 & n.7 (E.D. Va. Jan. 15, 2020) (noting generally that the Fourth Circuit "ha[s] found that certain claims and defenses can be abandoned or waived for failure to pursue them in the pleadings" including in opposition briefs); *United Supreme Council, 33 Degree of Ancient & Accepted Scottish Rite of Freemasonry, Prince Hall Affiliation, S. Jurisdiction of United States v. United Supreme Council of Ancient Accepted Scottish Rite for 33 Degree of Freemasonry, S. Jurisdiction, Prince Hall Affiliated*, 329 F. Supp. 3d 283, 294 (E.D.

Va. 2018) ("Failure to respond to an argument made in a dispositive pleading results in a concession of that claim.").

Even if this Court did not consider Plaintiff to have waived any defense against Defendant's intent argument, the undisputed extrinsic evidence provided by Defendant leads this Court to arrive at the same conclusion: the parties executed the Contract with the intent that it include the Addendum.  After having engaged Plaintiff for its software services, Defendant, in no uncertain terms, sent Plaintiff revisions to the standard contract template that Plaintiff provided to Defendant.  On December 15, 2017, Plaintiff's Account Representative adopted those changes by attaching, in the same email, the main body of the Contract and the "Active Minds/Charity Engine Contract Addendum 1 that addresses the modifications from [Defendant's] lawyers."  On December 20, 2017, after additional exchanges between the parties, Plaintiff's CRO confirmed in writing that Plaintiff "added [the latest changes] to the [A]ddendum" such that "[a]ll that[] [was] left is signatures." Dkt. 6-2 at 4.  On December 21, 2017, Plaintiff's CRO sent over an additional draft of the Addendum, which had by then been integrated into a single seven-page document that included the Addendum and the mandatory arbitration provision and reflected Defendant's latest proposed revisions.  Dkt. 6 ¶¶ 19, 23.  After the parties executed the Contract, Plaintiff sent Defendant's Founder the seven-page document containing the Addendum and referred to that attachment as "the fully executed contract."  *Id.* ¶ 27; Dkt. 6-2 at 2.  The exchanges between the parties represented a garden-variety negotiation, with no party expressing any concern about integrating the Addendum into the terms of the Contract.

Not only does the extrinsic evidence Defendant presents demonstrate a good-faith series of negotiations between the parties, the evidence also, without fail, reveals that Plaintiff executed the Contract in a single document containing the Addendum and therefore authenticates the

12

Addendum.  And because the preamble of the Addendum provides that its "clauses entirely replace the corresponding clauses in this Software & Services Contract (Contract Number 10123)," the mandatory arbitration provision supplants Clause 34 and thus controls the Contract.

This Court also observes that, in calculating damages in its Complaint, Plaintiff appears to have relied on the early termination clause in the very Addendum it claims does not apply to the Contract.  Paragraph 19 of the Complaint identifies "[a]n early termination fee "in the amount of $42,000" which comports with the superseding clause in the Addendum. Dkt. 1-2 ¶ 19.  However, the first undisputed six pages of the Contract only mention $42,000 as the annual fee.  Instead, Clause 11 describes, in pertinent part, a general equation for determining an early termination fee:

> Unless otherwise agreed to in writing by both parties, CLIENT agrees to pay a one-time fee for early termination equal to the remainder of months in the current contract term times the average monthly total fees accrued during the previous six (6) months prior to the date of requested termination.

Dkt. 1-2 at 12.  At the time Defendant requested an early termination, there were approximately 40 months remaining until the expiration of the Contract.  In order to calculate a $42,000 early termination fee per Clause 11 of the paginated Contract, the average monthly total fees accrued during the previous six months prior to the date of the requested termination would need to equal approximately $1,050.00.  Given that the average monthly fee is three times that amount—$3,500—when solely accounting for the annual fee, Plaintiff clearly did not reference the equation in the paginated portion of the Contract to determine its alleged early termination fee damages.  Instead, Plaintiff appears to have referenced the parallel Clause 11 in the Addendum which removes the aforementioned equation altogether and instead provides that in the event of an early termination, "[u]nless otherwise agreed to in writing by both parties, CLIENT agrees to pay a one-time fee for early termination of $42,000." Dkt. 6-1 at 10.  Plaintiff cannot approbate and reprobate

13

in its acknowledgement of the applicability of the Addendum to the dispute before this Court. Plaintiff must stake its position and remain consistent.

For the reasons described above, this Court finds that the mandatory arbitration provision in Clause 34 of the Addendum covers this contract dispute.

### iii. The relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce

The third *Adkins* element is also readily satisfied. 303 F.3d 496, 501 (4th Cir. 2002). Courts "in deciding to apply the FAA [ ] need not identify any specific effect upon interstate commerce, so long as 'in the aggregate the economic activity in question would represent 'a general practice subject to federal control.'" *Rota-McLarty v. Santander Consumer USA, Inc.*, 700 F.3d 690, 697-98 (4th Cir. 2012). The Supreme Court has opined that the FAA's requirement that the contract "involv[e] commerce" should be broadly construed to "mean a full exercise of constitutional power . . . . signal[ing] [Congress'] intent to exercise [ ] [its] commerce power to the full." *Allied-Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265, 277 (1995). Moreover, the Fourth Circuit does not require parties to affirmatively demonstrate that this element has been met. *Rota-McLarty*, 700 F.3d at 697 ("[T]he FAA does not impose a burden upon the party invoking the FAA to put forth specific evidence proving the interstate nature of the transaction."). Here, the Contract represents an agreement by two parties to conduct interstate business between Virginia and the District of Columbia. The nature of the parties' agreement necessitates interstate commerce, and neither of the parties allege otherwise.

### iv. The failure, neglect, or refusal of Plaintiff to arbitrate the dispute

This Court also finds that the fourth *Adkins* element is met. 303 F.3d at 501. The uncontroverted evidence proffered in defense counsel's declaration supports this finding. *See* Dkt. 7. On January 18, 2021, before Plaintiff filed the Complaint, Defendant filed a Demand for

Arbitration with the AAA. *See* Dkt. 7-1. That same day, defense counsel sent Plaintiff's counsel a letter indicating Defendant's understanding that Plaintiff "evidently has abandoned any pretext of negotiating such a compromise in good faith" and that the matter was therefore ripe for arbitration. Dkt. 7-2 at 2. After Plaintiff filed the instant Complaint, Plaintiff's counsel conveyed to defense counsel Plaintiff's position that "this dispute may only be arbitrated at [Plaintiff's] election" which "was never done" and thus requested that Defendant "accept service" of the instant Complaint. Dkt. 7-6 at 2. On March 2, 2021, Defendant met with Plaintiff before filing the Motion, but the parties "were not able to reach a resolution." Dkt. 7 ¶ 30. This Court therefore finds ample evidence that Plaintiff has explicitly rejected attempts to arbitrate the dispute.

### B. Proper Disposition of the Matter

Following this Court's determination that each of the *Adkins* factors have been met, the Court must determine whether to stay the matter or dismiss it altogether.

Section 3 of the FAA permits a party to seek a stay of "any suit or proceeding . . . brought in any of the courts of the United States" if the court determines an arbitration provision controls the dispute. Defendant advocates for dismissal and Plaintiff fails to entertain this issue. Thus, this Court is tasked with determining which remedy is most appropriate under the circumstances.

Section 3 of the FAA expressly provides:

> [i]f any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3. In *Choice Hotels Intern., Inc. v. BSR Tropicana Resort, Inc.*, the Fourth Circuit considered whether § 3 prohibits courts from dismissing actions where a written agreement

between parties requires arbitration.  252 F.3d 707, 709-10 (4th Cir. 2001).  The Fourth Circuit has held that "[n]otwithstanding the terms of § 3 . . . dismissal is a proper remedy when all of the issues presented in a lawsuit are arbitrable."  *Choice Hotels Intern., Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 709-10 (4th Cir. 2001) (citing *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992)); *see, e.g.*, *Galloway v. Priority Imports Richmond, LLC*, 426 F. Supp. 3d 236, 245 (E.D. Va. 2019) (compelling arbitration and dismissing the case without prejudice).

In reaching this determination, the Fourth Circuit cited to the Fifth Circuit's decision in *Alford*, 975 F.2d at 1164.  In *Alford*, the Fifth Circuit interpreted § 3 to mean that a district court "may not deny a stay" "upon a showing that the opposing party has commenced suit 'upon any issue referable to arbitration under an agreement in writing for such arbitration . . . .'" *Id*.  The court opined that "[t]his rule, however, was not intended to limit dismissal of a case in proper circumstances."  *Id*.  "The weight of authority clearly supports dismissal of the case when *all* of the issues raised in the district court must be submitted to arbitration."  *Id*. (citing *Sea–Land Serv., Inc. v. Sea-Land of P.R., Inc.*, 636 F. Supp. 750, 757 (D.P.R. 1986); *Sparling v. Hoffman Const. Co.*, 864 F.2d 635, 638 (9th Cir. 1988); *Hoffman v. Fidelity and Deposit Co. of Md.*, 734 F. Supp. 192, 195 (D.N.J. 1990); *Dancu v. Coopers & Lybrand*, 778 F. Supp. 832, 835 (E.D. Pa. 1991)).

In this case, "any dispute arising under [the Contract]" must be arbitrated in the Commonwealth of Virginia under the rules of the AAA.  Dkt. 6-1 at 10.  Each count of the Complaint is a contract dispute claim with respect to the Contract and therefore each issue raised in the Complaint is arbitrable.  Accordingly, this Court finds that dismissal of the Complaint without prejudice is the proper remedy.

## IV.  CONCLUSION

For the reasons articulated in this opinion, it is hereby ORDERED that Defendant's Motion to Compel Arbitration (Dkt. 4) is GRANTED; and it is

FURTHER ORDERED that Plaintiff's Complaint (Dkt. 1-2) is DISMISSED without prejudice.

The Clerk is directed to enter judgment for Defendant pursuant to Federal Rule of Civil Procedure 58 and close this civil action.

It is SO ORDERED.

Alexandria, Virginia
February 23, 2022

/s/
Rossie D. Alston, Jr.
United States District Judge